Field, J., delivered the opinion of the Court—Terry, C. J., concurring.
The only question necessary to consider for the determination of the appeal in this case, arises upon the refusal of the Court below to give certain instructions as to the liability of the defendants Laird, and Chambers.
The action is brought to recover damages sustained by the plaintiffs, in consequence of the breaking of a dam or embankment constructed across Deer Creek, in Nevada county, by the defendants Moore and Foss, under a contract with the defendants Laird and Chambers. It appears from the evidence introduced on the trial, that in June, 1856, the defendants, Moore and Foss, entered into a contract with Laird and Chambers, by which, in consideration of the payment by the latter of certain moneys in the progress of the work, and the balance upon its completion, Moore and Foss bound themselves to construct, at a designated *488 point on the Creek, a dam. or embankment, of certain specified dimensions, with good and substantial materials, in a workmanlike manner, and capable of resisting all floods and freshets of the stream, for a period of two years, and to deliver it completed by a given time. The construction was commenced in pursuance of the contract, in July or August, 1856, and with the exception of an interval of some weeks in September and October, was progressed in, until February 14th, 1857, when, being still incomplete, it was broken by a sudden freshet, and a large volume of water detained by the embankment being thus loosened, rushed down the channel of the stream, carrying away and destroying, in its course, the store of the plaintiffs, with their stock of merchandise.
The defendants Moore and Foss are architects, and were at time of the contract rejmted to be experienced and skillful in their profession and from the commencement of the work' up to and including the time of the breakage, they had exclusive control over its construction. The defendants Laird and Chambers exercised no superintendence, gave no directions, furnished no materials, employed no hands, and although the time within which, by the contract, the work was to be completed had passed, they had never signified any willingness to waive the objection as to the time, and accept the same when completed.
On the conclusion of the testimony, the defendants’ counsel requested the Court to give, among others, two instructions, which amounted in substance to this : that if the jury believed in the construction of the dam under the contract, Moore and Foss acted under an independent employment, had the sole control of the work, and the manner of its building, the employment and management of the hands engaged thereon; and that Laird and Chambers had not received the dam from such contractors before it broke, and that the injury complained of, occurred through the negligence and unskillfulness of Moore and Foss, and their employees, the jury would find for the defend- ' ants Laird and Chambers. The Court refused the instructions, and, at the request of the plaintiffs, charged the jury, “ That if the defendants Laird and Chambers, employed the defendants Moore and Foss, to construct the dam referred to in the pleadings and evidence in this cause, at the point where the same was erected, and such dam gave way and broke, by reason of its unskillful construction, and an injury r e s u11 e d<jherefrom to plaintiffs, then that the defendants Laird and Chambers, are liable in this action." s
The Court below thus placed'the liability of Laird and Chambers, for the injuries sustained, solely upon the fact that they contracted for the construction of the work, and held that this liability was not affected by the fact that they exercised no control or supervision over the work during its progress, or that *489 Moore and Eoss were independent contractors, to whose skill and ■judgment the construction of the work'was entirely entrusted.
To determine the propriety of the instructions given and refused, it will be necessary to consider the principles upon which responsibility could attach to Laird and Chambers, and their application to the facts of this case. If liability exists on theiri part, it must arise either from their relation to the parties engaged in the erection of the structure, or from the character} of the structure itself, independent of its construction.
The relation between parties to which responsibility attaches to one, for the acts or negligence of the other, must be that of superior and subordinate, or, as it is generally expressed, of master and servant, in which the latter is subject to the control of the former. The responsibility is placed where the power| exists. Having power to control, the superior or master is bound to exercise it to the prevention of injuries to third parties, or he will be held liable: ' The responsibility attaches to the superior, upon the principle qui facitper aliurn facitper se. To determine the responsibility, therefore, it is necessary to ascertain whether the relation existing between the party charged and the party actually committing the injury, be in fact that of superior and subordinate, or master and servant. “ Unless the relation of master and servant exist between them,” said Coleridge, J, in Milligan v. Wedge, “ the act of one creates no liability in the other.” 12 Adol. & Ellis, 737. “ The rule of respondeat superior,” said the Court of Appeals of New York, in Blake v. Ferris, “ as its terms imply, belongs to the relation of superior and subordinate, and is applicable to that relation, wherever it exists, whether between principal and agent, or master and seivvant, and to the subjects to which that relation extends, and is co-extensive with it, and ceases when the relation itself ceases to exist.” 1 Selden, 48.
By applying the test thus laid down to the relation existing between Laird and Chambers on the one hand, and Moore and Foss on the other, the question of liability will be easily solved. The relation between them wants one of the most essential features of the relation between master and servant. Something more than the mere right of selection, on the part of the principal, is essential to that relation. That right must be accompanied with the power of subsequent control, in the execution of the work contracted for. In the present case, that power was wanting, and, of course, the relation to which it was essential did not exist. Laird and Chambers conceived the project of I constructing a dam across a mountain stream, and applied to architects by profession, of reputed skill and experience, to car-, ry the project into execution. A dam capable of effecting a certain result was contracted forf the mode of construction, the se *490 lection of materials, and the employment of hands, were all entrusted to contractors, who, from their profession, were supposed to be much better qualified to judge of such matters than (Laird and Chambers themselves. The relation between the parties was that of independent contractors; Laird and Chambers, on the onte hand, contracting for a dam of certain dimenrsions and strength;—and Moore and Foss, on the other hand, contracting to construct and deliver such dam within a specified time, for a stipulated sum. To this relation the doctrine of respondeat superior does not apply, as will be perceived by an examination of the recent decisions of the English and American Courts. In Rapson v. Cubitt, 9 Exchequer R., 710, the defendant, a builder, was employed by the committee of a club, to make certain alterations at the club-house, including the preparation and fixing of gas-fittings, and he made a contract with one Bland, a gas-fitter, to perform this part of the work, in the performance of which, through the negligence of Bland, the gas exploded, and injured the plaintiff; and the Court held that the defendant was not liable. Lord Abinger, C. B., said’: “ The injury was occasioned by the negligence of Bland, who-did not - stand in the relation of servant to the defendant, but was merely a sub-contráctor with him ; and to him the plaintiff must look for redress.” And Parke, B., said : “ I am of the same opinion. The plaintiff has his remedy against Bland, whose negligence was the cause of the injury; if he attempts to go further, and to fix the defendant, it can only be on the ground of Bland’s being the servant of the defendant; but then the obvious answer is, that Bland was only a sub-contractor, to do certain of the works, and that the relation of servant and master did not subsist between him and the defendant.” In Burgess v. Gray, 1 Manning, Granger & Scott, 578, the defendant was proprietor of prerpises adjoining the highway, and employed one Palmer to construct a drain to communicate with the common sewer. Palmer employed workmen, who in the performance of the work placed a heap of gravel on the highway, in consequence of which the plaintiff in driving along the road was thrown from his cart, and sustained the injury for which the suit was brought. It was in evidence that Palmer had the entire control and management of the work, and employed workmen whom he paid, and charged the defendant with the amounts paid; that the defendant had applied to the commissioners for leave to break into the sewer, and that the dangerous condition of the heap was pointed out to him by a policeman before the accident occurred, when he promised to remove it. The plaintiff obtained a verdict, and the defendant a rule nisi to enter a nonsuit, in deciding which, Tindal, C. L, said: “If, indeed, this had been the simple case of a contract entered into between Gray and Palmer, that the latter should make the drain and remove the earth and rubbish, and there had *491 been no personal superintendence or interference on the part of the former, I should have said it fell within the principle contended for by my brother Byles, and that the damage should be made good by the contractor, and not by the individual for whom the work was done,” but on, the ground that the evidence showed that the soil had been placed on the road with the defendant’s consent, if not by his express direction, he was of opinion that the verdict should stand; and Coliman, J., said: “I think there was evidence enough to satisfy the jury that the entire control of the work had not been abandoned to Palmer,” and the rule was discharged. In Helbitt v. The London and North-Western Railway Company, (4 Exchequer, 254) workmen employed by the defendants in constructing a bridge over a public highway caused the death of a person passing beneath, by negligently allowing a stone to fall upon him, and it was held that the company were not liable in an action by the administratrix of the deceased. In rendering the judgment of the Court, Baron Rolfe said: “ The liability of anyone, other than the party actually guilty of any wrongful act, proceeds on the maxim, ‘ qui facit per aliitm facit per se.’ The party employing has the selection of the party employed, and it is reasonable, that he who has made choice of an unskillful or careless person to execute his orders, should be responsible for any injury resulting from the want of skill, or want of care of the person employed; but neither the principle of the rule, nor the rule itself, can apply to a case where the party sought to 'be charged does not stand in the character of employer to the party by whose negligent act the injury has been occasioned.”
In Knight v. Fox, 5 Exchequer, 721, a railway company had contracted with A to construct a portion of their line. Á contracted with B to erect a bridge on the line, B contracted with one Oockrane to erect, for a specified sum, a scaffold which had become necessary in the construction of the bridge, and to furnish the requisite materials, lamps, and other lights. In the erection of the scaffold, a portion was improperly projected upon the foot-path, owing to which, and the want of sufficient light. D fell over it at night, and was injured.; and it was held that an action could not be maintained by D against B for the injury, thus occasioned, and the plaintiff was nonsuited. On the rule to show cause why the nonsuit should not be set aside, Baron Parke held, the rule should be discharged, and said the case was “precisely the same as it would have been, if the defendants had entered into a contract with some third party to perform that work.” Alderson, B, was of the same opinion, and said, “ that when that negligent act was occasioned by Oockrane, he was acting in the character of a sub-contractor, and that he did the work on his own individual account. The defendants took no part in the matter. The plaintiff’s remedy was against Cock *492 rane," and so the rule was discharged. In Peachy v. Rowland, (16 Eng. Law and Equity, 443,) the defendants contracted with A, to fill in the earth over a drain which was constructed for them across a portion of the highway, from their house to the common sewer. A having filled the drain, left the earth so heaped up above the level of the highway, as to constitute a public nuisance, in consequence of which the plaintiff, in driving along the road, sustained personal injury, for which he brought his action. A few days previous to the accident, and before the completion of the work, one of the defendants had seen the earth heaped up on a portion of the drain, but there was no evidence that either of the defendants had interfered with, or exercised any control over the work, and the Court held that there was no evidence to go to the jury, of the defendants’ liability. The principle to be extracted from this decision is, that if a party be employed to do a lawful act, and in doing it, he commit a public nuisance, his employer is not liable.
The decisions of the New York Courts are to the same effect, and express, with equal clearness, the distinction between the liability of an employer, when the relation between him and the employed is that of master and servant, and when it is that of independent contractors. In Blake v. Ferris, (1 Selden,) the defendants had obtained permission from the authorities of the city of Mew York to construct a sewer, at their own expense, in a street of the city. One Butler was appointed by the street commissioner, an inspector of the work, and, as such, had charge of the sewer. He contracted with one Gibbons to furnish all the materials, and build the sewer in question according to the specifications of the street commissioner, and to provide proper guards and lights, at the excavation of the drain, for the prevention of accidents. In consequence of the negligent manner in which the sewer, while yet unfinished, was left open and unguarded in the night, the plaintiff's horses and carriage were driven into it, and for the injuries thereby occasioned, the suit was brought. Upon the eloso of the case, the defendant requested the Court to instruct the jury, in substance, that if the contractor, who was engaged in constructing the sewer when the accident happened, was exercising an independent employment, and the defendants did not interfere with the work, they were not liable; but the Court refused the instruction, and the plaintiff had judgment, and the case went to the Court of Appeals, where the judgment was reversed. In its opinion the Court said:
“ When a man is employed in doing a job, or piece of work, with his own means, and his own men, and employs others to help him, or to execute the work for Him, and under his control, he is the superior, who is responsible for their conduct, no matter whom he is doing the work for. To attempt to make the pri *493 mary principal, or employer, responsible in such cases, would be an attempt to push the doctrine of respondeat superior beyond the reason on which it is founded.”
In Pack v. The Mayor, etc., of New York, (4 Selden, 222,) the defendants had entered into a contract with one Foster to grade Bloomingdale road, and furnish materials for the same, in accordance with certain specifications. Foster made a contract with one Riley to do all the blasting of rocks required. In blasting, several fragments of rock were thrown into the house of the plaintiff, producing injury to his family and property; and it was held by the Court that the contractor Foster was not the agent or servant of the corporation, and that the city was not, in consequence, liable. Jewett, J., in delivering the opinion of the Court, said :
“ The doctrine is, that a person who undertakes the erection of a building,, or other work for his own benefit, is not responsible for injuries to third persons, occasioned by the negligence of a person, or his servant, who is actually engaged in executing the whole workunder an independent employment, or a general contract for that purpose. Foster was such a contractor, actually engaged in performing his contract for the entire job, for whose negligence, or that of his servants, the defendants are not liable.”
In Kelly v. The Mayor of New York, (1 Kernan, 432,) it was j! held that the corporation, which had contracted with a person to grade a street, was not liable for damages occasioned by the negligence of the workmen employed by the contractor in performing the work. In that ease, whilst the plaintiff was riding-in the street, his horse was injured by the careless blasting of one of the workmen. The cases of Blake v. Ferris, and Pack v. The Mayor, etc., of Flew York, were cited as authority, and in referring to a clause in the contract that the work was to be done under the direction, and to the satisfaction, of certain officers of the corporation, the Court said :
“ The, clause in question clearly gave to the corporation no power to control the contractor in the choice of his servants. That he might make his own selection of workmen, will not be denied. This right of selection lies at the foundation of the responsibility of a master, or principal, for the acts of his servant, or agent. * * * As a general rule, certainly ho one can be held responsible as principal who has not the right to choose the agent from whose act the injury follows.”
The doctrine laid down in this opinion as to the liability of Laird and Chambers is abundantly'sustained by the authorities above cited. Their liability, so far as the injury complained of arose from the negligent and unskillful erection of the dam, depends upon the question whether the relation between them and Moore and Foss was such as to authorize a supervision and control in the execution of the work. If it authorized such super *494 vision and control; if, in other words, it was that of master and servant, they are liable. If, on the other hand, Moore and Foss, under the contract, were engaged in an independent employment in the construction of a work which was entrusted entirely to their skill, and over which no supervision and control were exercised by Laird and Chambers, the relation of master - and servant did not exist, and the liability belonging to that relation, did not attach. The instructions asked by the defendants’ counsel were proper, and should have been given, unless a liability existed from the nature of the structure itself, independent of its manner of construction.
y If the injury complained of arose, not from the manner in which the embankment or dam was constructed, but from the fact that it was constructed at all; that is, if it was a structure i amounting to a nuisance, liability therefor would attach equally to Laird and Chambers, and the contractors, Moore and Foss. The authorities limit the liability to cases where structures amounting to nuisances are erected on or near and in respect to fixed property of the owner, and place the liability on the ground! that every man is bound to so use and manage his own property as not to injure others. When the structure is erected by the permission of the owner, there is reason in limiting the liability to cases where the nuisance is placed on, or near, and in respect to his own property; but, where it is erected by his express direction, we can perceive no reason for the limitation. It is not the structure itself, but its character as a nuisance, that causes the injury and creates the liability.
In Bush v. Steinman, 1 Bosanquet & Puller, 402, the defendant had purchased a house by the road-side, and contracted with a surveyor to repair it for a stipulated sum; a carpenter having a contract under the surveyor to do the whole business, employed a bricklayer under him, who contracted for a quantity of lime with a lime.-burner, by whose servant the lime in question was placed in the road. The plaintiff and his wife, riding in a chaise, were overturned and injured by the heap of lime, and they brought their action against the defendant, and took a verdict, with liberty to the defendant to move for a nonsuit. In the decision of the motion, Chief Justice Eyre concurred with his associates in sustaining the verdict, but at the same time said, “ I am ready to confess, that I find great difficulty in stating, with accuracy, the grounds on which it is to be supported. The relation between master and servant, as commonly exemplified in actions brought against the master, is not sufficient; and the general proposition, that a person shall be answerable for any injury which arises in carrying into execution that which he has employed another to do, seems to be too large and loose. * * * Where a civil injury of the kind now complained of has been sustained, the remedy ought to be obvious, and the person in *495 jured should have only to discover the owner of the house which was the occasion of the mischief; not to be compelled to enter into the concerns between that owner and other persons, the inconvenience of which, would be more heavily felt than any which can arise from circuity of action. Upon the whole case, therefore, though.I still feel difficulty in stating the precise principle on which the action is founded, I am satisfied with the opinion of my brothers.”
Heath, J., founded his opinion on the fact that all the subcontracting parties were in the employ of the defendant. “It has been,” he said, “strongly urged, that the defendant is not liable, because his liability can be founded in nothing but the mere relation of master and servant. But no authority has been cited to support that proposition. Whatever may be the doctrine of the civil law, it is perfectly clear that our law carries such liability much further.”
Brooke, J., placed his concurrence with Mr. Justice Heath on the ground, that “ he who has work going on for his benefit and on his own premises, must be answerable for the acts of those he employs.”
In Laugher v. Painter, 5 Barn. & Cres., 579, the defendant, who was owner of a carriage, hired a pair of horses to draw it, for a day, from a stable-keeper, who provided the driver, through whose negligent driving an injuiry was done to the horse of the plaintiff. The Court were divided as to the defendant’s liability Littledale, J., in giving his opinion, commented upon the cases of Bush v. Steinman, and Sly v. Edgley, (6 Esp., in which last ease Lord Ellen borough followed, at nisi prius, the authority of Bush v. Steinman) and drew a distinction between the liability of a party for injuries resulting from the use of hired property, and injuries arising from the use and occupation of real estate. “ And the rule of law may be,” he said, “ that in all cases where a man is in possession- of fixed property he must take care that his property is so used and managed that other persons are not injured, and that whether his property be managed by his own immediate servants, or contractors, or their servants. The injuries done upon land, or buildings, are in the nature of nuisances, for which the occupier ought to be chargeable when occasioned by any acts of persons whom he brings upon the premises. The use of the premises is confined by the law to himself, and he should take care not to bring persons there who do any mischief to others. * * * But admitting those cases, the same principle does not apply to personal movable chattels, or to the permanent use and enjoyment of land or houses. * * * The use of personal chattels is merely a temporary thing, the enjoyment of which is, in many cases, trusted to the care and direction of persons exercising public employment, and the mere possession of that, when the care and direction of it is entrusted to such per *496 sons who exercise public employment, and in virtue of that, furnish and provide the means of using it, is not sufficient to render the owner liable.” And Chief Justice Abbot, in the same case, said: “ Whatever is done for the working of my mine or the repair or my house, by persons mediately or immediately employed by me, may be considered as done by me. I have the control and management of' all that belongs to my land or my house, and it is my fault if I do not so exercise my authority as to prevent injury to another.”
In Quarman v. Bennett, decided in 1840, (6 Exchequer, 499,) Baron Parke, in delivering the opinion of the Court, drew the same distinction; but in Reedie v. The London North-western Railway Company, decided in 1840, (4 Welsb., Hurl. & Gold., 254,) the Court of Exchequer held there was no such distinction, except in cases where the acts complained of amount to a nuisance. In this case, the counsel for the plaintiff argued that there was a recognized distinction between injuries arising from the careless or unskillful management of an animal, or other per-, sonal chattel, and an injury resulting from the negligent management of fixed and real property; but Baron Rolfe, in delivering the opinion of the Court, after alluding to the distinction noticed by Littendale, J., in Laugher v. Painter, said : “ But on full consideration, we have come to the conclusion that there is no such distinction, unless, perhaps, in cases when the act complained of is such as to amount to a nuisance ;' and, in fact, that, according to the modern decisions, Bush v. Steinman must be taken not to be the law, or, at all events, that it cannot be supported on the ground on which the judgment of the Court proceeded. * * * It remains only to be observed that, in none of the modern cases has the alleged distinction between real and personal property been admitted. In Milligan v. Wedge, Lord Denman expresses doubt as to the existence of such a distinction, in any case; and in the more recent case of Allen v. Haywood, the judgment of the Court proceeded expressly on the ground that the contractor, in a case like the present, is the only party responsible.”
The doctrine laid down in' this last case appears to us to be founded in good sense; and it follows from it that the distinction, as to the liability of a party, when he engages a contractor to erect structures on his own premises, and when he engages such contractor to erect them on the premises of another, does not rest on any just principle. If the enterprise undertaken be a lawful one, and. be entrusted to competent and skillful architects, there is no just reason why liability should attach to the projector, for injuries occurring in its progress, any more if such enterprise be executed on his own land, than if executed elsewhere. If a man, wishing to build a house for his own use, upon his own premises, lets it out by contract to an architect, who is *497 to provide all materials, and deliver it completed; upon no just principle should his liability be greater than if he undertook the building of a similar house upon his neighbor’s property, and j let it out by contract in the same way. If the structure amount / to a nuisance—if the injury complained of arises, not from its ' negligent or unskillful construction, but from the fact that it is constructed at all—then liability would attach, whether, the J erection be made under his own supervision and control, or | let out by contract to others. To illustrate this position—if the «. owner of land erect a dam, or permit a dam to be erected, across * J a stream running through hi a property, by which his neighbor’s J land is flooded, he is liable for damages, for the injury results, not j from the manner in which the dam is erected, but from the fact/ that it is erected all. He has used, or permitted his property to be used, to the injury of others, and must be responsible. But if no injury follows from the dam itself, and its construction is let out by contract, there is no reason why the owner should be responsible for injuries arising from the negligence or unskillfulness of the contractors, during the progress of the work, from the fact that it is a structure upon his own land, if such liability would not attach to him, if the structure were on the land of another.
“ We have examined the authorities in the Massachusetts Reports, cited by the learned counsel of plaintiff in his very able brief, and also the case of Bailey v. The Mayor of New York, in 3 Hill, and 2 Denio. The Massachusetts cases follow the older English decisions, and in Lowell v. Boston & Lowell Rail-Road Corporation, (23 Pickney, 24,) the Court cite Bush v. Steinman, with approbation and say, “ this decison is fully supported by the authorities cited, and well established principles.” The question involved at the ease at bar, does not appear to have been discussed in Massachusetts in the light of recent English decisions.
In the case in 3 Hill, and 2 Denio, the corporation of Hew York was hold responsible for injuries occasioned by the negligent and unskillful construction of a dam on the Croton River, which was a part of the works built for supplying the city with pure water. In that case it would appear that the dam had been completed and accepted by the corporation. By its acceptance and subsequent use, the corporation assumed the responsibility of the work, and virtually guarantied its strength and capability to protect against injuries. To third parties it then became liable, and although the Chancellor in his opinion does not mention in terms the acceptance of the dam—yet this fact must" have had a controlling influence on his judgment, for he places the liability of the city expressly on the ground that the dam was the property of the corporation and that the corporation was bound to see that it was not used by any one so as to become noxious to the occupiers of property on the river below, and concluded by *498 by saying “ and upon that ground, though I confess with some hesitation, I shall assent to the affirmance of the judgment of the Court below.” In Blake v. Ferris, already cited, which was de- cided nearly six years after the case of Bailey v. The Mayor etc., of New York, the Court, in reference to Bush v. Steinman, observes that it was followed by Lord Ellenborough at nisi prius in the case of Sely v. Edgebery, (6 Esp. Rep., 6,) but was believed never to have received the sanction of an English Court. In Laugher v. Painter, its authority in reference to the case before the Court was denied and the correctness of the principle on which it was founded doubted by Littendale, J., and in Quarman v. Burnett, and Rupson v. Cabitt, it was held inapplicable to those cases, and in Reedie v. The Horth-Western Railway Company, it was held not to be law, or at all events that it could not be supported on the ground in which the judgement proceeded, and the Court concludes its opinion by stating that upon examination it appeared that the main proposition of that case was not law in England or in Hew York.
' The recent decisions of England and of New York, appeared to us to be sustained by sound reasoning, and to place the liabilities of parties upon just principles, and we only advance one step further in the same direction, following the same reasoning, 1 in holding, as we do, that the liability of Laird and Chambers is j not affected by the question, whether they were the owners or | not, of the land, where the dam in question was located.
For injuries occurring in the progress of the work before its completion and acceptance, the contractors alone were responsible to third parties, the defective construction which caused the injury not'being inherent in the original plan contracted for. If the mode and manner which constituted the defect by which the injuries complained of were occasioned, had been inherent in the plan, and this qtlan had been devised by Laird and Chambers, which the con tractors were simply engaged to carry out, then liability would attach to Laird and Chambers, for injuries occurring in its progress, as well as afterwards: But this is not pretended. If the injuries complained of had been occasioned I after the completion of the dam by the contractors, and its ab- ceptance by Laird and Chambers, there can be no doubt of the liability of the latter. Parties for whom work contracted for is undertaken, must see to it before acceptance, that the work, i as to strength and durability, and all other particulars necessary to -the safety of the property and persons of third parties, is subjected'to proper tests, and that it is sufficient. By acceptance and subsequent use, the owners assume to the world the responsibility of its sufficiency, and to third parties, the liability of the contractors has ceased, and their own commenced. In the present case, the damages are, in fact, claimed for the negligence and unskillfulness of the w’ork of the contractors before *499 its completion and acceptance, and it is sought to fasten a liability for such damages upon Laird and Chambers, from the fact that it was in their mind that the undertaking originated, and it was their volition which set that undertaking into execution,. If these reasons are sufficient to charge them-, then upon the |j same principle, no enterprise requiring for its execution the \ skill, learning, and knowledge of professional men, could be undertaken, without risks on the part of the original projectors, which no prudent man would take.
It follows that, as the case stands before this Court upon the record, the liability of Laird and Chambers must depend upon the character of the relation between them and Moore and Foss, and the refusal of the instructions based upon that relation, was error, for which a new trial must be had.
Judgment reversed, and cause remanded.